VENEER PRODUCTS COMPANY *vs.* HARRY F. ROSS.

Piscataquis.     Opinion January 8, 1929.

*C. W. & H. M. Hayes,*
*John E. Nelson,* for plaintiff.
*Fellows & Fellows,*
*Ryder & Simpson,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, PATTANGALL, JJ.

444

PATTANGALL, J.   On report. Action to recover damages for alleged breach of contract.

Defendant is the owner of certain timberland located in Smithtown, so-called, in Piscataquis County. The property was purchased by him in February, 1923, at which time plaintiff was engaged in operating the land under a permit or lease from defendant's grantors.

The permit was, in essential respects, in the usual form in use between timberland owners and operators in this state. The territory covered by its terms included blocks numbered 19 to 36 inclusive. It was executed on July 17, 1919, and permitted plaintiff to cut spruce, fir and pine logs, of a certain size. It covered a period of five years. The price to be paid by plaintiff for stumpage was eight dollars per thousand feet, with a possible differential to be applied after the first year, depending upon the market price of sawed lumber.

Plaintiff was permitted to cut three million feet of lumber and obligated to cut, or at least to pay stumpage on, two million feet, during each of the five years. If it cut less than two million feet in any given year, it was, nevertheless, to pay for two million feet. But it might cut, without charge, during the following year, an excess over two million feet, sufficient to equal the overpayment of the preceding year.

It was estimated that there was on these blocks, in July, 1919, fifteen million feet of standing timber, of the size and kind described in the permit. If plaintiff, each year, cut the maximum amount allowed under the contract, it would cut all that was estimated to be on the land. If it confined its cutting to the minimum, it would cut two-thirds of the amount so estimated.

In 1921, the contract was amended in two particulars. The first amendment required plaintiff to cut all trees six inches in diameter or over, breast high, which were infected with a destructive parasite known as the bud-worm, within the area upon which it operated. The second amendment removed, for the logging season of 1921-1922, the obligation to pay for more logs than were actually cut, and extended the permit for an additional year.

In June, 1923, it was agreed, by the parties to this suit, that it was necessary to take some action, additional to that contemplated

in their contract, to save the timber which was in process of destruction by the parasite already referred to, and they agreed that defendant should make a separate permit to whom he pleased covering Lots 31, 32, 33, 34, parts of Lots 35 and 36, and the south halves of Lots 29 and 30. Immediately thereafter this territory was leased to Hollingsworth & Whitney Company, which operated it during the logging season of 1923-1924.

The original contract between plaintiff and defendant's predecessors in title contained a clause which provided that "all differences of opinion which may arise between said grantors and said grantee as to the mode of said grantee operating or of landing said logs, as to the amount of damages due from said grantee to said grantors by reason of failure to comply with the specifications of this permit are to be adjusted by the scaler or, if both parties are not satisfied, then by an arbitration committee of three."

By the amendment of 1921, plaintiff had bound itself to cut all infected trees, six inches and over in diameter at breast height, which would make merchantable timber and which were within the area selected by it, from year to year, for its logging operations. In June, 1924, defendant claimed that plaintiff had not complied with this clause in the contract, claiming damages for its failure to do so in the amount of $32,160.63. Arbitrators were appointed and after an extended hearing, defendant's claim was rejected.

In May, 1924, another permit was given by defendant to Hollingsworth & Whitney Company to operate on Lots 26, 27, 28 and the north half of Lots 29 and 30; also in another section of the town, Lots 13, 14, 19 and 20. A portion of this territory was embraced in the original contract and none of it had been included in the supplementary agreement of June, 1923.

Hollingsworth & Whitney Company operated upon these lots, notwithstanding the expressed desire of plaintiff to occupy a portion of them, during the last year of plaintiff's lease.

Plaintiff asserts that this later permit to Hollingsworth & Whitney Company was a breach of the contract between it and defendant and predicates its claim for damages upon that breach, on the ground that its permit was exclusive as to the class of timber and territory described therein, and that it had not consented to this lease to Hollingsworth & Whitney Company.

Defendant takes the position (1) that the original permit was not exclusive; (2) that the permit of May, 1924, was given with the express consent of the plaintiff; (3) that even if the original permit should be held to be exclusive and even if the permit of May, 1924, had not been consented to, so that giving it constituted a breach of the contract, plaintiff waived the breach; and (4) that no damage, or at least no definitely proved damage, resulted from the alleged breach.

There are certain well settled legal propositions directly bearing upon the controversy which are not and cannot be in dispute. Such a permit as that under which plaintiff operated is revocable at the pleasure of the land owner, and is revoked by the conveyance of the land without reservation. *Banton* v. *Shorey*, 77 Me., 48; *Buker* v. *Bowden*, 83 Me., 67; *Emerson* v. *Shores*, 95 Me., 237; *Brown* v. *Bishop*, 105 Me., 272. But the contract right, created by the permit, is not revocable and is subject to breach. *Emerson* v. *Shores*, supra.

In the instant case the evidence is conclusive that, although the sale of the land to defendant was without reservation and therefore, in the absence of any agreement between plaintiff and defendant, would have worked a revocation of the lease, defendant adopted the contract as his own and became bound by it so that the rights and obligations of the parties are exactly as though the original permit and the amendments of 1921 had been executed by plaintiff and this defendant.

A permit to cut a definite quantity of timber on a given tract does not necessarily forbid the owner of the land from operating on the same territory or permitting others to do so. *Martin* v. *Johnson*, 105 Me., 156. But such contracts may give exclusive territorial rights and we are of the opinion that this is true of the permit under consideration, so far as certain kinds of timber are concerned.

Plaintiff's only undertaking, under the original permit, was to cut spruce and pine trees, twelve inches or more in diameter, breast high, and fir ten inches or more in diameter, breast high.

Defendant expressly reserved "the right to grant to other parties the privilege of cutting and hauling any growth not herein named on any or all parts of the above named premises." This

reservation seems to carry the fair implication that the license to cut spruce, pine and fir, of the agreed size was exclusive. The amendments of 1921 did not affect this proposition.

The parties construed the contract as exclusive. In 1923 when the ravages of the bud-worm made it imperative that the soft wood timber should be cut more rapidly than plaintiff could reasonably or profitably cut it, arrangements were made with Hollingsworth & Whitney Company to operate a certain section of the town, but before contracting with that company defendant solicited and received from plaintiff written consent to so contract. This writing recites that plaintiff "will allow Mr. H. F. Ross (defendant) to cut or permit the stumpage" on certain lots and concludes, "this concession is made in order to allow him to salvage the bud-worm infected timber."

No such consent would have been solicited by defendant, no such language in granting it would have been used by plaintiff or allowed to pass without protest by defendant, had not both parties regarded plaintiff's permit as conferring an exclusive right to cut spruce, pine and fir, of the agreed size, on the territory allotted to it, during the time of the contract. Defendant did not attempt to enlarge the grant to Hollingsworth & Whitney Company in 1924 without first asking for and, as he claims, receiving the consent of plaintiff to the agreement.

It is also to be noted that the understanding between the parties was that plaintiff should select the particular location for its operations of each year. This right is recognized in the first amendment to the original permit which recites that "The Veneer Products Company (plaintiff) shall cut, within the area *which it shall select* from year to year under said permit." According to the evidence, this was the construction put upon the contract by the parties, plaintiff informing defendant each year where it intended to operate and up to at least the season of 1924-1925, there was no interference with its plans on the part of defendant and no claim of right to so interfere.

In the spring of 1924, plaintiff was about to enter upon the last year of its operations on defendant's land. It was privileged to cut three million feet of large logs, during that period, and to select the territory from which they should be cut but had obligated itself

to cut the small logs as well, in the territory so selected. The only limitation on its right to locate its 1924-1925 operation was that created by its agreement with defendant, given in 1923, permitting him to lease to Hollingsworth & Whitney Company lots numbered 31, 32, 33 and 34, the east half of Lot 35, a portion of Lot 36 and the south halves of Lots 29 and 30. These lots had been occupied by Hollingsworth & Whitney Company in 1923-1924 and a substantial amount of timber taken therefrom, but had not been entirely cut over.

Defendant was, that spring, facing a very serious situation. The destructive work of the bud-worm had continued until it became imperative to market the infested trees in order to save them from becoming an entire loss.

Under these circumstances he was anxious not only that plaintiff should make as large a cut as possible but that Hollingsworth & Whitney Company should continue its operations on a large scale, and at a conference with the latter, he was informed that, in order to carry on a substantial operation, additional territory would need to be added to that already allotted to it.

If such an arrangement were to be made, the natural and logical proceeding was to add to the Hollingsworth & Whitney Company permit the remaining portions of Lots 29 and 30 and the adjoining Lots 26, 27 and 28, not only because this land was adjacent to that embraced in its existing lease but also because these lots were separated from the tier of lots lying directly north of them by a ridge, so that it was impracticable to combine both tiers of lots in one operation and defendant had been advised that there was sufficient timber north of the ridge to provide plaintiff with its quota.

On May 12, 1924, a permit was drawn up under the terms of which the Hollingsworth & Whitney Company territory was enlarged by the addition of Lots 26, 27 and 28, the north halves of Lots 29 and 30 in the eastern part of the town, and Lots 13, 14, 19 and 20 in the western part. But such a permit, if executed by defendant without the consent of plaintiff, would constitute a breach of the contract existing between them.

He did execute the permit on May 17 and he claims that plaintiff, on May 15, by its agents, Mr. Hall and Mr. Crowley, gave oral

consent to his so doing. This is denied and thus a sharp issue of fact is raised between the parties.

Defendant, with his timberland cruiser, Mr. Hussey, met Mr. Hall, plaintiff's manager, and Mr. Crowley, who had charge of plaintiff's woods operations, at the hotel in Greenville on May 15, where they were in conference for an hour or more. Conflicting evidence is presented as to what took place at that conference. Defendant testified that after going over the situation fully, plaintiff's agents assented to the proposition that the territory south of the ridge might be allotted to Hollingsworth & Whitney Company and that plaintiff would operate north of the ridge. His testimony was corroborated by Mr. Hussey, whose memory was refreshed by entries made, at the time, in his diary. It was contradicted by Mr. Hall and Mr. Crowley, who go so far as to state that the subject was not even mentioned and that the conference was devoted to discussing whether or not plaintiff had, in the cutting already done by it, failed to observe the requirements of its lease.

The basis of plaintiff's claim against defendant is, that, without its consent and without right, defendant ousted it from territory upon which, under its lease, it had exclusive right to cut. Defendant meets this issue squarely by asserting that the alleged ouster was a matter of agreement between the parties and that the agreement was consummated at Greenville, on May 15, 1924.

Plaintiff, in its brief, raises the point that evidence of plaintiff's oral consent to the lease from defendant to Hollingsworth & Whitney Company is inadmissible, the contract between plaintiff and defendant being in writing. But parties to a written contract may change its terms by subsequent oral agreement. *Copeland* v. *Hewett et als*, 96 Me., 525. And certainly if they may do so, evidence that they did so is admissible. There is no merit in this contention of plaintiff.

The issue involved here is whether or not the oral agreement, which defendant relies upon, was made. Upon this issue, the burden is on the defendant. The evidence as to just what did occur at Greenville is not only conflicting but confusing. The statements of the witnesses concerning it must be studied and interpreted in view of prior events and in the reflected light of their subsequent conduct.

When the entire situation is carefully analyzed it appears that, at that meeting, four matters were discussed: first, the question of whether or not plaintiff had violated its contract by failing to cut timber, during the two preceding seasons, in accordance with the terms of its lease; second, whether or not plaintiff would consent to enlarging the Hollingsworth & Whitney Company permit to include the north halves of Lots 29 and 30; third, if such consent were given and plaintiff confined its operations to Lots 23, 24 and the adjacent territory north of the ridge which separated those lots from 29 and 30, whether arrangements could be made which would avoid interference between the two permittees in landing their logs; fourth, whether or not there was sufficient timber north of the ridge to enable plaintiff to cut its quota in that territory alone.

All of these matters were discussed in an informal and friendly manner and with an apparent desire on the part of plaintiff to coöperate with defendant in his effort to salvage as much as possible of the timber which was in process of destruction by the bud-worm and on the part of the defendant to so arrange matters that plaintiff would be in a position to cut at least two million feet and three million if it cared to do so.

There was no direct disagreement between the parties nor was there any definite agreement. No definite conclusion was reached concerning any one of the matters under discussion. Everything was tentative. Defendant appears to have understood that plaintiff consented to the proposed enlargement of the Hollingsworth & Whitney Company permit. We do not find that this assumption was warranted or that the minds of the parties met on this very important point. Neither Hussey's testimony as refreshed from the entry made in his diary at the time, the later correspondence between the parties, nor conversation between them at a subsequent conference, accords with the theory that a definite agreement was made, which authorized defendant to permit additional territory to the Hollingsworth & Whitney Company.

It is probable that some such agreement might have been entered into at a further conference had defendant not pressed his claim for damages against plaintiff on account of improper cutting. This claim, amounting to over $32,000, was formally presented in June, insisted upon in a conference in September, submitted to arbitra-

tion in October, and, as has been noted, was finally decided against the defendant. The controversy concerning this matter entirely changed the attitude of the parties toward each other and after it was seriously entered upon, neither was disposed to accord favors to the other. Both insisted upon their strict legal rights.

Defendant, on May 17, executed the new lease to Hollingsworth & Whitney Company, including in it not only the north halves of Lots 29 and 30, the proposition which had been discussed at Greenville, but also Lots 26, 27 and 28 in the eastern part of the town and Lots 13, 14, 19 and 20 in the western part, about which nothing had been said at that conference.

By so doing, he confined plaintiff's operations to Lots 23 and 24 and adjacent territory in the northeastern portion of the town. Plaintiff operated that territory, after having protested against being ousted from the south slope, and cut thereon, during the following season, 3,127,760 feet of timber. This included 1,967,370 feet of the larger sized logs, of which it was entitled to cut three million feet. Its original plan had been to cut the north halves of Lots 29 and 30 in addition to its operations north of the ridge. Had it been permitted to do so, it would have gotten its quota. To the extent that it was prevented from so doing, it was damaged and defendant is liable for that damage.

The measure of damages is the difference between the contract price for stumpage and the price which plaintiff would have been obliged to pay, in the open market, for similar stumpage. The contract price was eight dollars per thousand feet. The parties agree that a fair market price for standing timber on Lots 29 and 30 was twelve dollars per thousand feet. There was, available to plaintiff, but for the permit to Hollingsworth&Whitney Company, 1,050,000 feet of large logs on the south slope, in the northern portion of these lots.

We do not find that plaintiff, in any sense, waived its right to cut on this territory by continuing to operate on that part of the town which was still open to it under its lease, nor is the amount of damage caused by defendant's breach uncertain or difficult to ascertain. Depriving plaintiff of the opportunity to cut the large timber on Lots 29 and 30 represented a loss to it of four dollars per thousand feet on one million fifty thousand feet, or $4,200 for which defendant is liable.

452

Plaintiff urged payment also for damages on account of being excluded from Lot 28 but offered no evidence tending to show either that it had intended to operate that lot or that the stumpage thereon was of more value than that on the land north of the ridge upon which it did operate. The recoverable damage is limited to the amount stated above.

*Judgment for plaintiff for $4,200, with interest from the date of the writ.*